IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | CRIMINAL NO. ELH-19-0450 |
| STEPHEN WAYNE CORMACK | * | |
| | * | |
| Defendant | * | |

* * * * * * * * * * * * *

## CONSOLIDATED MOTION TO SUPPRESS
## TANGIBLE AND DERIVATIVE EVIDENCE

The defendant, Stephen Cormack, through his attorneys, Andrew I. Alperstein, Esq., Joseph M. Pappafotis, Esq., and Alperstein & Diener, P.A., hereby moves this Honorable Court, pursuant to Federal Rule of Criminal Procedure Rule 12(b)(3) and the Fourth Amendment to the United States Constitution, to suppress all tangible evidence and all derivative evidence obtained by the unlawful government actions, including but not limited to:

1) The unlawful entry and search of Mr. Cormack's personal office space located at 301 West Preston Street, 14th Floor, Office "C", Baltimore, Maryland;

2) The subsequent seizure and search of computer equipment from within Mr. Cormack's personal office space;

3) The search executed pursuant to a warrant at Mr. Cormack's residence located at 24 Lyndale Avenue, Nottingham, Maryland;

4) The search executed at Mr. Cormack's personal office space pursuant to a search warrant;

5) The subsequent search pursuant to a search warrant executed on electronics by federal investigators subsequent to the seizures at Mr. Cormack's residence and his personal office.

1

## Statement of Facts as Alleged

On February 5, 2019, investigators met with an anonymous individual who reported that they were a co-worker of the defendant, Stephen Cormack, at the Maryland Department of General Services. The source of information told investigators that they saw an image that they believed to be child pornography on Mr. Cormack's work computer approximately two and a half weeks before speaking with investigators. The anonymous source of information described the image as:

A white male, approximately 8 years-old posing in white underwear.

The source of information told investigators that the child looked terrified, but that the image did not show nudity, although their opinion was that the image was for sexual gratification. The source of information also described an event several years prior when he allegedly observed Mr. Cormack viewing a website that depicted "young Japanese boys". The source of information further averred during the interview with investigators that he was aware that Mr. Cormack had been charged with sexual offenses in approximately 1995. Additionally, that Mr. Cormack was "very into computers" in the opinion of the anonymous source and would migrate from his work computer to his personal laptop during the day.

After concluding the interview with the anonymous source, investigators obtained a 1996 report from the Baltimore County Police Department regarding Mr. Cormack. Investigators indicated that the 1996 police records relate to allegation against Mr. Cormack that occurred between 1979 and 1984. The allegations involved improper sexual activity with children. As a result of the allegations, Mr. Cormack was found guilty of child abuse.

On March 28, 2019, investigators, along with members of the Maryland State Police Forensics Lab, Maryland Department of Information Technology, and Maryland Capitol Police, entered Mr. Cormack's office after work hours and without a warrant. When investigators arrived at Mr.

Cormack's office, it was labeled office "C" and the name "Steve Cormack" was displayed. It was also locked. Members of Maryland Capitol Police provided a key to access Mr. Cormack's office. Once inside the office, investigators began by photographing the room and taking inventory of the items inside. Investigators noted a Dell computer and a Fantom Drive external storage drive. Once inside the office, investigators obtained consent to search the office and computers from John Evans, Maryland Department of Information Technology Chief Information Officer. Investigators then conducted cursory searches of the electronics and found an image that appeared to be child pornography. Investigators imaged the electronic devices and then sought search warrants for Mr. Cormack's office and home.

On April 29, 2019, investigators obtained a search and seizure warrant for Mr. Cormack home located at 24 Lyndale Avenue, Nottingham, Maryland as well as his office located at 301 Preston Street, Baltimore, Maryland. During the execution of the warrants at Mr. Cormack's office and home more electronic devices were seized.

On May 15, 2019, Special Agent Aquino sought and obtained a search warrant for authorization to search again the seized electronic items.

### Summary of Argument

This Consolidated Motion to Suppress Evidence addresses directly several searches and seizures executed by the government. It is meant to reach evidence directly referenced, but also evidence derivative of the specifically enumerated searches and seizures. The defense contends that there was an initial Fourth Amendment violation during the warrantless search of Mr. Cormack's personal office space that is so inextricably intertwined with the subsequent searches and seizures that no curative doctrine will save them despite the fact investigators obtained search and seizure warrants. In sum, while the defense would agree that searches pursuant to search warrants enjoy

judicial preference, investigators should not be permitted to insulate constitutional violations by ensconcing them within search warrants.

## Argument

In support of the motion, Mr. Cormack alleges the following:

1. The government has charged Mr. Cormack with one count of possession of child pornography in violation of 18 U.S.C. § 2252A and 18 U.S.C. § 2256.

2. The charge against Mr. Cormack is based on evidence seized pursuant to a search of Mr. Cormack's personal office space at the Maryland Department of General Services, evidence seized from Mr. Cormack's residence, and searches of electronic devices located at both locations.

3. Some of the searches were conducted pursuant to search and seizure warrants, however, it is the Defendant's contention that the warrants did not comply with the Fourth Amendment.

4. Before warrants were sought and executed, however, government agents conducted a warrantless search of Mr. Cormack's personal workspace.

    a. **Investigators Violated Mr. Cormack's Fourth Amendment Rights When They Unlocked his Office and Entered his Personal Workspace**

5. The Fourth Amendment prohibits "unreasonable searches and seizures" by government agents, including government employers or supervisors. U.S. Const. amend. IV; O'Connor v. Ortega, 480 U.S. 709, 715 (1987) (plurality opinion). A plurality of the Supreme Court held in O'Connor that government employees may have a legitimate expectation of privacy in their offices or in parts of their offices such as their desks or file cabinets. Id. At 716-18; Shields v. Burge, 874 F.2d 1201, 1203-04 (7th Cir. 1989) (recognizing the plurality opinions of O'Connor as controlling). While Mr. Cormack's reasonable expectation of privacy in his private work space underpins his Fourth Amendment rights, the Fourth Amendment also

protects him, more abstractly, against trespass by government actors investigating crime. See e.g., Florida v. Jardines, 569 U.S. 1 (2013). Here, government agents conducted an unreasonable warrantless search when they unlocked and entered Mr. Cormack's private office. The physical intrusion by criminal investigators alone should be sufficient to trigger exclusion of direct and derivative fruits of this search. Nevertheless, such an intrusion would offend an objectively reasonable expectation of privacy.

6. As a result of the illegal entry into Mr. Cormack's personal work space, investigators then applied for and obtained warrants for Mr. Cormack's home and electronics the government believes he had access too. These warrants are tainted by this initial illegality and are not independent sources such that they cure the initial illegality. Compare Murray v. United States, 487 U.S. 533 (1988) (where an initial Fourth Amendment violation was cured by the subsequent acquisition of a search warrant where the warrant was supported by independent sources of information from the Fourth Amendment violation).

    **b. The Affidavit in Support of the Warrant for Mr. Cormack's Home Did Not Provide a Substantial Basis to Find Probable Cause that Evidence of a Crime Would be Found There**

7. Specifically, the warrant executed on Mr. Cormack's home in Nottingham, Maryland was unsupported by probable cause because there was an insufficient nexus between Mr. Cormack's suspected wrongdoing and his home. Under the Fourth Amendment, probable cause sufficient to obtain a search warrant, "exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe," that seizable items might be found at a particular location. Carroll v. United States, 267 U.S. 132, 162 (1925); Brinegar v. United States, 338 U.S. 160, 175-76 (1949). Regardless of whether an

individual is validly suspected of committing a crime, an application for a search warrant must demonstrate that "evidence is likely to be found at the place to be searched. <u>Groh v. Ramirez</u>, 540 U.S. 551 (2004). Stated another way, "[t]here must, of course, be a nexus...between the item to be seized and criminal behavior." <u>Warden, Md. Penitentiary v. Hayden</u>, 387 U.S. 294, 307 (1967).

8. Here, the warrant was not supported by sufficient probable cause that evidence of child pornography would be found at Mr. Cormack's residence. The only connection in the affidavit between computer data possessed or acquired at Mr. Cormack's office in Baltimore and his home in Nottingham is the anonymous source of information's claim that Mr. Cormack had a "backup drive that goes home with him every night." The affidavit in support of the warrant did not provide probable cause that the backup drive contained contraband data, and therefore, whether it was transported from Mr. Cormack's office to his residence does not create a probable cause nexus to Mr. Cormack's residence.

9. Assuming, *arguendo*, that the anonymous informant's statement that Cormack took an external hard drive home with him every night was sufficient to create a probable cause nexus to Mr. Cormack's residence, the information is insufficiently corroborated and therefore does not support a substantial basis to find probable cause. <u>Compare</u> <u>United States v. Lalor</u>, 996 F.2d 1578 (4th Cir. 1993) (affidavit sufficiently stated informant's basis of knowledge where one informant corroborated another and at least one informant averred actually illegal conduct in the form of drug distribution). Here, the anonymous informant did not provide information to law enforcement that they witnessed anything that would meet the definition of child pornography on Mr. Cormack's computer. Nor did they provide information that would support their assertion that Mr. Cormack took the external hard drive to his house. At best,

their assertion supports a conclusion that the hard drive was removed from the office at 301 Preston Street.

### c. The Warrant for Mr. Cormack's Office and the Warrant Obtained by Special Aquino Are Not Supported Adequately by Independent Sources of Information

10. Investigators obtained Search Warrants to search Mr. Cormack office and also to image electronics seized during earlier searches. It is the defense's contention that the two aforementioned warrants do not satisfy the independent source doctrine. The independent source doctrine, "applies when a 'search pursuant to [a] warrant was in fact a genuinely independent source of the information and tangible evidence' that would otherwise be subject to exclusion because they were found during an earlier unlawful search." United States v. Hill, 116 F.2d 243, 251 (4th Cir. 2015) (quoting Murray supra). Here, the warrant for Mr. Cormack's office, and the warrant obtained by Special Agent Aquino are not genuinely independent sources from the initial illegal entry into Mr. Cormack's personal office space on March 28, 2019.

WHEREFORE, Mr. Cormack respectfully moves this Honorable Court to suppress any and all tangible and derivative evidence obtained from the aforementioned unlawful searches and seizures that the government proposes to use as evidence against him.

Respectfully submitted,

_____
Joseph M. Pappafotis, Esq.
Federal Bar No. 20807
ALPERSTEIN & DIENER, P.A.
201 N. Charles Street, Suite 2000
Baltimore, Maryland 21201
jmp@alpersteinlaw.com
(410) 685-0990
Attorney for Defendant

Respectfully submitted,

_____
Andrew I. Alperstein, Esq.
Federal Bar No. 26645
ALPERSTEIN & DIENER, P.A.
201 N. Charles Street, Suite 2000
Baltimore, Maryland 21201
aia@alpersteinlaw.com
(410) 685-0990
Attorney for Defendant

**Request for Hearing**

The Defendant, pursuant to Rule 105.6 of the local rules of the United States District Court for the District of Maryland, requests a hearing on the foregoing Motion.

_____
Joseph M. Pappafotis, Esq.
Federal Bar No. 20807
ALPERSTEIN & DIENER, P.A.
Attorney for Defendant

_____
Andrew I. Alperstein, Esq.
Federal Bar No. 26645
ALPERSTEIN & DIENER, P.A.
Attorney for Defendant

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a copy of the aforegoing Consolidated Motion to Suppress Tangible and Derivative Evidence was delivered to the following: Office of the U.S. Attorney for the District of Maryland, Northern Division, 36 S. Charles Street, Maryland 20770, on the 26th day of February, 2021.

_____
Joseph M. Pappafotis, Esq.
Federal Bar No. 20807
ALPERSTEIN & DIENER, P.A.
Attorney for Defendant

_____
Andrew I. Alperstein, Esq.
Federal Bar No. 26645
ALPERSTEIN & DIENER, P.A.
Attorney for Defendant